United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DELL HENDERSON,<br><br>Plaintiff,<br><br>v.<br><br>REETIKA KIM KUMAR, et al.,<br><br>Defendants. | Case No. 16-cv-06893-JST<br><br>**ORDER OF PARTIAL SERVICE; DISMISSING ONE CLAIM WITH LEAVE TO AMEND** |

Plaintiff, an inmate at Salinas Valley State Prison ("SVSP"), filed this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff's amended complaint is now before the Court for initial screening pursuant to 28 U.S.C. § 1915A. ECF No. 14 ("Am. Compl.").

## DISCUSSION

### A. Standard of Review

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). Pro se pleadings must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations and internal

quotations omitted).  Although a complaint "does not need detailed factual allegations [in order to state a claim], . . . a plaintiff's obligation to provide the grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

**B.     Amended Complaint**

Plaintiff makes the following allegations in the amended complaint.

On or about August 10, 2014, Plaintiff informed SVSP medical officials that he believed that he was having an allergic reaction to pistachios or certain medication because his legs were covered in hives and itchy spots. Am. Compl. at 9–10. In response, on August 12, 2014, named defendant SVSP Dr. Tuvera examined Plaintiff and prescribed him hydrocortisone cream. Id. at 10. Dr. Tuvera also considered prescribing Benadryl but did not do so after learning that Benadryl was non-formulary. Id. Dr. Tuvera also ordered a lab test because Plaintiff stated that he might also be suffering from a bacterial infection. Id.

On August 13, 2014, Plaintiff informed SVSP medical officials that the allergic reaction had worsened; that his throat had begun to hurt and close up; and that his neck glands were hurting. Am. Compl. at 10. Dr. Tuvera informed Plaintiff that he would see Plaintiff after the lab test results came back even though the lab test was unrelated to Plaintiff's allergic reaction. Dr. Tuvera failed to give Plaintiff a Kenalog injection. Id.

On August 14, 2014, Plaintiff informed Dr. Tuvera that he was getting worse. Dr. Tuvera spoke with Plaintiff; wrote something on a piece of paper; said that he would take care of it; and sent Plaintiff back to his housing unit. Am. Compl. at 11. That evening, Plaintiff's throat closed

2

up and he was unable to swallow any food. Id. The next morning, Plaintiff informed the nurses that he was unable to swallow and asked when his medication would arrive. The nurses told Plaintiff that whatever the doctor ordered would be sent to him. Id.

On August 17, 2014, Plaintiff again informed the nurses that he was unable to swallow or eat due to an allergic reaction. Am. Compl. at 11. Plaintiff informed the nurses that he needed to see a doctor immediately. Plaintiff also submitted a Health Care Service Request Form wherein he reported that his throat was killing him; he could not swallow; his neck glands were in pain; and his lips were swollen. Id. On August 18, 2014, Plaintiff walked to the Facility B medical offices and informed the nurses that he was having an allergic reaction to pistachio. He stated that because of the allergic reaction, he could neither eat nor swallow; a rash, bumps, and purple patches had spread all over his legs and arms; and his throat, face, and lips had swelled up. Id. Plaintiff was sent to the Central Treatment Center via ambulance. Id. at 12. Plaintiff was given 300 milligrams of Zantac and directed to watch out for increased swelling, which Plaintiff alleges was insufficient to treat his serious medical need. Id.

On August 19, 2014, Plaintiff submitted another Health Care Service Request, reporting that he was in terrible pain; that the inside of his mouth felt extremely sensitive; that his mouth burned when he tried to eat, drink water, or swallow; and that there was a rash on his legs. Am. Compl. at 12.

On August 20, 2014, Plaintiff went to the Facility B medical offices and complained of shortness of breath; trouble swallowing; a burning sensation when swallowing; and that Dr. Tuvera had failed to treat him for his allergies. Am. Compl. at 12. Plaintiff alleges that, in response to his complaint, Dr. Tuvera discontinued Plaintiff's prescription for Tylenol 3 with codeine, leaving Plaintiff with no treatment for his chronic pain. Id. at 13.

By August 22, 2014, Plaintiff's gums were bleeding; Plaintiff had bleeding holes in the back of his throat; and Plaintiff had lost twenty pounds. Am. Compl. at 13.

On August 25, 2014, Plaintiff informed Dr. Tuvera that he continued to suffer from a severe allergic reaction. Am. Compl. at 13. Plaintiff complained that he had waited over a week before his blood was drawn for the lab test ordered on August 10, 2014; complained about

3

treatment he received from two other doctors regarding his mouth; and communicated his intent to sue Dr. Tuvera. Id. Dr. Tuvera administered a Kenalog injection to address the allergic reaction. Id. at 14. Not long after, Plaintiff complained that he was having an allergic reaction to the Kenalog injection, but Dr. Tuvera told Plaintiff to allow the injection more time to work. Id. Two days later, on August 27, 2014, Plaintiff was found in his cell unconscious, unresponsive, and lying in his urine. Id. Plaintiff was immediately transported to Natividad Medical Center ("NMC") where he was taken to the ICU and treated with an IV infusion of Benadryl and Solu-Medrol, a steroid. Id.

On August 29, 2014, Plaintiff was speaking with named defendant NMC Dr. Swiney, when named defendant NMC Dr. Duesdieker noticed Plaintiff's handwritten notes that listed the names of various doctors, including Dr. Deusdieker, and the notation "cruel and unusual punishment." Am. Compl. at 14–15. Dr. Duesdieker grabbed the notes and scratched his name out, and Plaintiff responded that Dr. Duesdieker could not destroy his notes and that he wanted to file a complaint against Dr. Duesdieker. Id. at 15. Dr. Duesdieker then gestured to all the doctors to leave the room and all the doctors left. Dr. Duesdieker returned to the room approximately ten minutes later and informed the prison officers guarding Plaintiff that he was immediately discharging Plaintiff back to the prison. Plaintiff was discharged without any medication other than Metropolol, a high blood pressure medication, and Plaintiff was not fully healed at the time of his discharge. Id. at 22.

On August 31, 2014, Plaintiff's throat closed back up, and, on September 1, 2014, he was rushed to the Twin Cities Hospital where he was treated with the medications he had received while at NMC. Am. Compl. at 16. On September 3, 2014, Plaintiff was discharged from Twin Cities Hospital with orders to treat his allergic reaction with Benadryl and prednisone; and to treat his chronic back, leg, and sciatic nerve pain with morphine.

**C.     Legal Claims**

Plaintiff has named as defendants Dr. Tuvera, Dr. Kumar, Dr. Swiney, Dr. Duesdieker, and NMC. Am. Compl. at 7–9. Plaintiff alleges that Defendants' actions and inactions constituted deliberate indifference to his serious medical needs, in violation of the Eighth and Fourteenth

4

Amendments.

Plaintiff's Fourteenth Amendment claim is DISMISSED without leave to amend. In relevant part, the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Plaintiff has not alleged either a due process claim or equal protection claim, and the facts alleged do not support such claims. See, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 845–46 (1998) (touchstone of due process is protection of individual against arbitrary action of government, whether fault lies in denial of fundamental procedural fairness or in exercise of power without any reasonable justification in service of legitimate governmental interest); City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."). The Court therefore dismisses the Fourteenth Amendment claims with prejudice because amendment would be futile. Carrico v. City and Cnty. of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011) (leave to amend properly denied if amendment would be futile).

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059 (citing Estelle, 429 U.S. at 104). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. Id. at 1059–60 (citing Wood v. Housewright, 900 F.2d 1332, 1337–41 (9th Cir. 1990)). A prison

official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Plaintiff's only allegations regarding the treatment received for his bacterial infection and his chronic pain are as follows. On August 10, 2014, Plaintiff complained of a bacterial infection and, in response, Dr. Tuvera ordered a lab test. On August 20, 2014, Dr. Tuvera discontinued Plaintiff's prescription for Tylenol 3 with codeine, leaving Plaintiff with no treatment for his chronic pain. These allegations are insufficient to state cognizable Eighth Amendment claims that are plausible on their face. Accordingly, Plaintiff's Eighth Amendment claims related to the treatment received for his bacterial infection and his chronic pain are DISMISSED from this action with leave to amend.

Plaintiff's allegation that Dr. Kumar caused the lack of proper medical for his allergic reaction by failing to review his triage and treatment flow sheet as required by prison procedures, and by failing to supervise or control her subordinates states a cognizable Eighth Amendment claim. Am. Compl. at 12. A supervisor may be held liable for under section 1983 upon a showing of either "(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his subordinates if [he] . . . directed the violations, or knew of the violations and failed to act to prevent them."). The requisite causal connection may be proved by (i) the supervisor's "own culpable action or inaction in the training, supervision, or control of subordinates;" (ii) his "acquiescence in the constitutional deprivation of which a complaint is made;" or (iii) "conduct that showed a reckless or callous indifference to the rights of others." Cunningham v. Gates, 229 F.3d 1271, 1292 (9th Cir. 2000).

The Court also finds that Plaintiff has stated a cognizable Eighth Amendment claims against Dr. Tuvera, Dr. Swiney and Dr. Duesdiker. Plaintiff has alleged that Dr. Tuvera failed to treat his serious allergic reaction. Plaintiff has also alleged that Dr. Swiney and Dr. Duesdiker knew of his serious medical needs, and discharged him from Natividad Medical Center without

prescribing the necessary medication to address his serious medical needs.

The Court DISMISSES with prejudice Plaintiff's Eighth Amendment claim against NMC. Plaintiff proffers two theories of liability for NMC. First, Plaintiff argues that, NMC's Policy of Condition of Admission ("Policy") constituted a policy whereby NMC assumed responsibility and liability for its doctors' unconstitutional acts, and required its medical staff to execute physicians' orders. Am. Compl. at 8–9 and 16. As explained in the Court's April 4, 2017 Order of Dismissal with Leave to Amend (ECF No. 8), there is no respondeat superior liability under § 1983. See Monell v. Dep't of Social Svcs. of City of New York, 436 U.S. 658, 694 (1978). To impose municipal liability on NMC under § 1983 for a violation of constitutional rights, Plaintiff must allege that (1) Plaintiff possessed a constitutional right of which he was deprived; (2) that NMC had a policy; (3) that this policy amounted to deliberate indifference to Plaintiff's constitutional rights; and (4) that the policy was the moving force behind the constitutional violation. See Plumeau v. School Dist. # 40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997). NMC's Policy appears to be standard admission paperwork, not a policy. To the extent that the Policy describes hospital policies, the policies described were not the "moving force" in that they did not cause Drs. Swiney and Duesdiker's allegedly unconstitutional acts. Plaintiff has identified Drs. Swiney and Duesdiker as his physicians, and the nursing staff executed Drs. Swiney and Duesdiker's orders. To the extent that NMC agreed to assume liability for Drs. Swiney and Duesdiker's actions in the Policy, this does not establish liability for a § 1983 violation.

Second, Plaintiff argues that NMC failed to have a policy in place that would have prevented Drs. Swiney and Duesdiker from discharging Plaintiff without the appropriate medication. Id. at 16. As an initial matter, the Court notes that Plaintiff's second theory of liability (lack of policy) is inconsistent with his first theory (Policy requires NMC to assume liability). More importantly, the amended complaint fails to allege facts sufficient to support § 1983 liability based on a failure to train. A failure to train may establish § 1983 liability in limited circumstances, Connick v. Thompson, 563 U.S. 51 at 61 (2011), but only where the failure to train reflects a deliberate or conscious choice can the shortcoming be properly thought of as a policy or custom that is actionable under § 1983. City of Canton v. Harris, 489 U.S. 378, 389

(1989). In addition, ordinarily, "a pattern of similar constitutional violations" by untrained employees is necessary to establish that the failure to train or supervise is a deliberate policy. Connick, 563 U.S. 51 at 52. The Court therefore dismisses NMC from this action with prejudice because amendment would be futile. Carrico, 656 F.3d at 1008.

**CONCLUSION**

1. Plaintiff has stated cognizable Eighth Amendment claims related to the medical treatment received for his allergic reaction against Dr. Tuvera, Dr. Kumar, Dr. Swiney, and Dr. Duesdiker. NMC is DISMISSED from this action with prejudice. Plaintiff's claims regarding medical treatment for his bacterial infection and chronic pain are DISMISSED with leave to amend.

2. Should Plaintiff wish to amend his claims regarding the medical treatment received for his bacterial infection and chronic pain, he shall file a second amended complaint within 30 days of this order. The pleading must be simple and concise and must include the caption and civil case number used in this order and the words SECOND AMENDED COMPLAINT on the first page. Plaintiff should include in the second amended complaint the claims which the Court has found cognizable. Plaintiff is advised that the second amended complaint will supersede the prior complaints and all other pleadings. Claims and defendants not included in the second amended complaint will not be considered by the Court. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). If Plaintiff fails to file a proper second amended complaint within the designated time, the amended complaint (ECF No. 14) will remain the operative complaint.

3. The Clerk of the Court shall issue summons and the United States Marshal shall serve, without prepayment of fees, a copy of the amended complaint (ECF No. 14), and a copy of this order upon **Dr. Fernando Tuvera and Dr. Reetika Kim Kumar at Salinas Valley State Prison, P. O. Box 1020, Soledad, CA 93960-1020,** and upon **Dr. Swiney and Dr. Duesdiker at Natividad Medical Center, 1441 Constitution Blvd, Salinas, CA 93906**. The Clerk shall also mail a courtesy copy of the amended complaint and this order to the California Attorney General's Office.

4. In order to expedite the resolution of this case, the Court orders as follows:

    a. No later than 91 days from the date this order is filed, Defendants must file

and serve a motion for summary judgment or other dispositive motion. A motion for summary judgment also must be accompanied by a Rand notice so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. Woods v. Carey, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).[1]

If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due.

     b.     Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants no later than 28 days from the date the motion is filed. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

     c.     Defendants shall file a reply brief no later than 14 days after the date the opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion.

5. Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact — that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in current Rule 56(c), that contradict the facts shown in Defendants' declarations and

---

[1] If Defendants assert that Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), Defendants must raise such argument in a motion for summary judgment, pursuant to the Ninth Circuit's opinion in Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014) (en banc) (overruling Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, should be raised by a defendant as an unenumerated Rule 12(b) motion). Such a motion should also incorporate a modified Wyatt notice in light of Albino. See Wyatt v. Terhune, 315 F.3d 1108, 1120, n.14 (9th Cir. 2003); Stratton v. Buck, 697 F.3d 1004, 1008 (9th Cir. 2012).

documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. Rand v. Rowland, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A).[2]

6. All communications by Plaintiff with the Court must be served on Defendants' counsel by mailing a true copy of the document to Defendants' counsel. The Court may disregard any document which a party files but fails to send a copy of to his opponent. Until Defendants' counsel has been designated, Plaintiff may mail a true copy of the document directly to Defendants, but once Defendants are represented by counsel, all documents must be mailed to counsel rather than directly to Defendants.

7. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

8. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

9. Any motion for an extension of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.

10. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

IT IS SO ORDERED.

Dated: October 11, 2017

_____
JON S. TIGAR
United States District Judge

---

[2] This Rand notice does not excuse Defendants' obligation to serve said notice again concurrently with a motion for summary judgment. Woods, 684 F.3d at 939.